UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

OLGA S. BONDARENKO,

     Plaintiff,

     v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

     Defendant.

No.  2:13-CV-00154-JTR

ORDER GRANTING PLAINTIFF'S
MOTION  FOR SUMMARY
JUDGMENT

**BEFORE THE COURT** are cross-motions for summary judgment.  ECF No. 17, 19.  Attorney Dana C. Madsen represents Plaintiff; Special Assistant United States Attorney Franco L. Becia represents the Commissioner of Social Security (Defendant).  The parties have consented to proceed before a magistrate judge.  ECF No. 7.  After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment.

## JURISDICTION

On June 28, 2007, Plaintiff filed Title II and Title XVI applications for a period of disability and disability insurance benefits, alleging disability beginning on August 10, 2006.  Tr. 107, 303.  Plaintiff reported she could not work due to psychosis NOS and bipolar disorder.  Tr. 276.  Plaintiff's claim was denied initially and on reconsideration, and she requested a hearing before an

ORDER GRANTING PLAINTIFF'S MOTION . . . - 1

administrative law judge (ALJ).  Tr. 155-231.  The first hearing was held on August 25, 2009, at which time medical expert Margaret Moore, Ph.D., and Plaintiff, who was represented by counsel, testified.  Tr. 40-64.  ALJ R.J. Payne presided.  Tr. 40.  The ALJ denied benefits on September 4, 2009.  Tr. 107-124.

The Appeals Council granted review and remanded the case with instructions to the ALJ to:  (1) further evaluate Plaintiff's mental impairments and reconcile inconsistent findings within the ALJ's opinion; (2) give further consideration to Plaintiff's RFC "and provide rationale with specific references to evidence of record in support of all assessed limitations . . . [i]n so doing, evaluate the nonexamining source opinion of Dr. Underwood . . . and explain the weight given to such opinion evidence;" and (3) if warranted, obtain vocational expert testimony.  Tr. 131.

ALJ Payne convened a second hearing on January 7, 2011.  Tr. 65-76.  At that hearing, medical expert Thomas McKnight, Ph.D., questioned "whether or not [Plaintiff] actually has a mental health-related disorder or this is a rather histrionic parent/child related disorder, or there's malingering."  Tr. 74.  Dr. McKnight recommended Plaintiff undergo a "thorough examination by a dispassionate individual" to provide insight into Plaintiff's psychological functioning.  Tr. 74. The ALJ ordered the exam.  Tr. 74-75.  On March 1, 2011, Plaintiff was examined by James E. Bailey, Ph.D.  Tr. 570-576.  The ALJ convened a third hearing on May 26, 2011.  Tr. 77-99.  At that hearing, medical expert Thomas McKnight, Ph.D., and Plaintiff, who was represented by counsel, testified.  Tr. 81-99.  On June 10, 2011, the ALJ issued a decision finding that Plaintiff was not disabled. Tr. 23-34.  The Appeals Council declined review.  Tr. 1-3.  The instant matter is before the Court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties and thus, they are only briefly

summarized here.  At the time of the first hearing,[1] Plaintiff was 28 years old, divorced, and living at home with her parents and siblings.  Tr. 415.  Her family emigrated from Kyrgyzstan when she was 11 years old, she graduated from high school, and she took some classes at a local community college.  Tr. 53, 571, 584.

Plaintiff reported her past work included delivering flowers, filing medical records, cleaning offices, telephonic customer service, providing childcare at a daycare, fast food worker and housekeeper at a convent.  Tr. 53-54, 56, 58, 415.  Plaintiff testified she stopped working due to "total confusion of the mind."  Tr. 59.  She also testified that after August 2009, she worked briefly for Kirby Vacuums but quit because it was commission-based, and she did not make enough money.  Tr. 95.

Plaintiff testified she spends her day watching television, "reading, eating, going out, riding [a] bike . . . babysitting my nephew, helping my mom clean the house.  I just do normal stuff."  Tr. 62.  When asked how she thought she would perform if she obtained a job, Plaintiff responded:

> A.     "I think I would do really good.  I would try my best.  I've been okay for months now, for like maybe six months, and since I haven't been sick, I've been recovering, getting stronger, and psychologically getting stronger and every other way."

Tr. 63.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed *de novo*, with

---

[1]The decision indicates Plaintiff "appeared at two hearings held on January 7, 2001 and May 26, 2011 . . . ."  Tr. 23.  The January date contains a typographical error; the first post-remand hearing was held on January 7, *2011*.  Tr. 65.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 3

deference to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that

ORDER GRANTING PLAINTIFF'S MOTION . . . - 4

(1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(i-v), 416.920(a)(4)(i-v).

## ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since August 10, 2006, the alleged onset date. Tr. 25. At step two, the ALJ found Plaintiff has the following medically determinable impairments: "malingering, possible psychotic disorder and/or possible paranoid personality disorder." Tr. 25. The ALJ also concluded at step two that Plaintiff "does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore the claimant does not have a severe impairment or combination of impairments (20 C.F.R. 404.1521 *et seq.* and 416.921 *et seq.*)." Tr. 25-26. As a result, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act. Tr. 34.

## ISSUES

Plaintiff contends the ALJ erred by (1) finding Plaintiff was not credible; (2) improperly weighing the medical evidence; and (3) failing to find Plaintiff's mental impairments were severe at step two of the sequential evaluation process. ECF No. 17 at 8-17.

## DISCUSSION

**A.    Credibility**

Plaintiff argues the ALJ erred by finding Plaintiff had little credibility. ECF No. 17 at 16-17. In finding Plaintiff had little credibility, the ALJ relied upon Plaintiff's infrequent mental health treatment, her failure to keep appointments, her

failure to take medication as prescribed, and that her reported daily activities were inconsistent with her allegations of disabling impairments.  Tr. 27-28.

As stated by the Ninth Circuit:

> An ALJ cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423 (d)(5)(A) . . . .  This holds true even where the claimant introduces medical evidence showing that he has an ailment reasonably expected to produce some pain; many medical conditions produce pain not severe enough to preclude gainful employment.

*Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  In deciding whether to admit a claimant's subjective symptom testimony, the ALJ must engage in a two-step analysis.  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  Under the first step, the claimant must produce objective medical evidence of underlying "impairment," and must show that the impairment, or a combination of impairments, that could reasonably be expected to produce pain or other symptoms."  *Smolen,* 80 F.3d at 1281-82; *see Cotton v. Bowen,* 799 F.2d 1403, 1405 (9th Cir. 1986).  If this test is satisfied, and if no evidence exists of malingering, then the ALJ, under the second step, may reject the claimant's testimony about severity of symptoms with "specific findings stating clear and convincing reasons for doing so."  *Smolen,* 80 F.3d at 1284.  "[Q]uestions of credibility and resolutions of conflicts in the testimony are functions solely of the Secretary."  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (*quoting Waters v. Gardner,* 452 F.2d 855 n.7 (9th Cir. 1971).  However, if malingering is established, the adjudicator is not bound by the "clear and convincing standard." *See, e.g., Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

In determining a claimant's credibility, an ALJ may consider, among other factors, inconsistencies between the claimant's testimony and the claimant's daily activities, conduct and/or work record.  *Light v. Social Sec. Admin*., 119 F.3d 789,

ORDER GRANTING PLAINTIFF'S MOTION . . . - 6

792 (9th Cir. 1997).  "If the ALJ's credibility finding is supported by substantial evidence in the record, [the Court] may not engage in second-guessing." *Thomas v. Barnhart,* 278 F.3d 947, 959 (9th Cir. 2002).

Plaintiff contends the ALJ erred by rejecting Plaintiff's credibility based upon her infrequent mental health treatment.  In assessing a claimant's credibility, an ALJ properly relies upon "'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (*quoting Smolen*, 80 F.3d at 1284); *Fair*, 885 F.2d at 603.  A claimant's statements may be less credible "if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure."  SSR 96-7p.  Moreover, an "unexplained, or inadequately explained, failure to seek treatment may be the basis for an adverse credibility finding unless one of a 'number of good reasons for not doing so' applies."  *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

In arguing that the ALJ erred by relying on Plaintiff's failure to seek psychological treatment, Plaintiff cites *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).  ECF No. 17 at 16-17.  In that case, the Ninth Circuit found that the ALJ erred by favoring a non-examining psychologist's opinion over the opinion of an examining psychologist.  *Van Nguyen*, 100 F.3d at 1464.  The ALJ in *Van Nguyen* rejected an examining doctor's opinion, in part, because no evidence existed of a mental disorder prior to the exam conducted to support claimant's request for benefits.  *Id.*  The *Van Nguyen* court noted that people afflicted with depression often fail to recognize they need help, and thus the fact that the claimant did not seek treatment "until late in the day is not a substantial basis on which to conclude that [an examining physician's] assessment of claimant's condition is inaccurate."  *Id.*

This case is distinguishable.  In this case, Plaintiff has a long history of presenting with vague symptoms related to mental impairments.  Tr. 348, 350, 352, 359, 361, 363.  The evidence in this case also reveals Plaintiff failed to follow medical advice, comply with her prescription medication regime, and to seek treatment on a regular basis.  Tr. 368, 408, 411.  Plaintiff offered no reason for her refusal to seek regular treatment.  Plaintiff's suggestion that the burden lies with the ALJ to elicit an explanation for Plaintiff's lack of treatment is not supported by authority.  Moreover, Plaintiff was diagnosed with malingering or with presenting a fictitious disorder on multiple occasions.  Tr. 339, 348, 422, 427, 436, 570, 575.

As the ALJ found in this case, the record reflects Plaintiff did not seek on-going treatment for her psychological symptoms.  Nor does evidence exist that her failure to seek treatment was attributable to her mental impairment rather than her own personal preference.  It was thus reasonable for the ALJ to conclude that the level or frequency of treatment was inconsistent with the level of complaints.  *See Molina v. Astrue*, 674 F.3d 1104, 1112-1113 (9th Cir. 2012); SSR 96-7p.  As such, the ALJ did not err by relying, in part, upon Plaintiff's failure to seek treatment and her failure to comply with prescribed medications and medical recommendations in concluding Plaintiff had little credibility.

**B.    Medical Opinions**

Plaintiff argues the ALJ erred in weighing the medical evidence.  ECF No. 17 at 11-16.  Because the ALJ's analysis related to John Arnold, Ph.D., was rife with errors, the case must be remanded for reconsideration.

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, more weight should be given to the opinion of a treating physician than to the opinions

of non-treating physicians.  *Id.*  Similarly, an examining physician's opinion is generally entitled to more weight than a non-examining physician's opinion. *Lester*, 81 F.3d at 830.  While the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, a non-examining physician's opinion may constitute substantial evidence when it is consistent with other independent evidence in the record.  *Magallanes v. Bowen,* 881 F.2d 747, 752 (9th Cir. 1989).

### 1.    John Arnold, Ph.D.

Plaintiff contends the ALJ erred by rejecting Dr. Arnold's opinions related to Plaintiff's severe and marked limitations.  ECF No. 17 at 14.  On April 6, 2011, Dr. Arnold examined Plaintiff at the request of her attorney.  Tr. 583-586.  Dr. Arnold administered a "semi structured clinical interview," a mental status exam, and the MMPI-2RF and reviewed Plaintiff's medical records.  Tr. 583.  He opined Plaintiff's MMPI-2RF profile was similar to individuals who are suspicious of other's motives to the point of paranoia, and her responses to the MSE suggested borderline intellectual abilities.  Tr. 585.  Dr. Arnold also indicated Plaintiff's scores suggested a psychotic disorder and mood instability consistent with bipolar depression, and he diagnosed Plaintiff with Bipolar I disorder, mixed and rule out schizoaffective disorder, along with paranoid personality disorder.  Tr. 586.

Dr. Arnold completed a check-the-box Mental Medical Source Statement in which he assessed Plaintiff with severe limitations in the ability to:  (1) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (2) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and (3) accept instructions and respond appropriately to criticism from supervisors.  Tr. 588.  Dr. Arnold assessed Plaintiff with marked limitations in her ability to:  (1) understand and remember detailed instructions; (2) maintain attention and concentration for

ORDER GRANTING PLAINTIFF'S MOTION . . . - 9

extended periods; (3) work in coordination with or proximity to others without being distracted by them; (4) get along with co-workers or peers without distracting them or exhibiting behavioral extremes; (5) respond appropriately to changes in the work setting; and (6) set realistic goals or make plans independently of others.  Tr. 587-589.

The ALJ noted that Dr. Arnold assigned a GAF score of 50, which the ALJ opined was "odd and internally inconsistent" because Dr. McKnight asserted Plaintiff's performance on the Adult Weschler memory test indicated Plaintiff could function at a higher level.  Tr. 32.  However, Dr. McKnight was incorrect – Dr. Arnold did not administer the Adult Weschler test to Plaintiff.  While Dr. Arnold's assignment of a GAF of 50 may be inconsistent with other examiners' findings who did administer the Adult Weschler test, the reason provided by the ALJ – internal inconsistency – is not supported by the record.  The Court is constrained to review only those reasons asserted by the ALJ.  *Sec. Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *Pinto v. Massanari,* 249 F.3d 840, 847-848 (9th Cir. 2001).

Moreover, during the mini mental status exam administered by Dr. Arnold, Plaintiff failed at both serial 7's and serial 3's, and Dr. Arnold concluded Plaintiff had "mild to moderate concentration difficulties at the time of the assessment."  Tr. 585.  These exam findings and Dr. Arnold's ratings are consistent.  The factors cited by the ALJ do not support the conclusion that Dr. Arnold's exam results were internally inconsistent.

The ALJ's analysis of Dr. Arnold's report has additional errors.  The ALJ found that Dr. Arnold's assessment deserved little weight because "he did not have objective findings of Dr. Bailey that looked at feigning specifically in terms of psychotic related issues and memory."  Tr. 32.  Yet, Dr. Arnold's report explicitly revealed he reviewed Dr. Bailey's report:  "There was a psychological assessment report from Dr. J. Bailey around this period citing diagnosis of possible

ORDER GRANTING PLAINTIFF'S MOTION . . . - 10

malingering.  The latter may have been related to her suspiciousness and motivational issues."  Tr. 584.  Dr. Arnold also explained why Dr. Bailey's malingering diagnosis did not fully explain Plaintiff's condition.  As such, the record does not support a failure to consider Dr. Bailey's assessment as a reason upon which to reject Dr. Arnold's opinion.

Also, in discussing Dr. Arnold's assessment, the ALJ improperly "emphasized" the fact that Dr. Arnold was engaged by Plaintiff's attorney to provide an evaluation connected with her claim for benefits:

> it is emphasized the claimant underwent the examination that formed the basis of the opinion in question rather than an attempt to seek treatment for symptoms.  The claimant underwent the evaluation through attorney referral and in connection with an effort to generate evidence for the current appeal.  Further, the evaluator was presumably paid for the report.  Although such evidence is certainly legitimate it cannot be entirely ignored regarding the context in which it was produced.

Tr. 31.  In the absence of actual impropriety, it is error for an ALJ to discount a physician's opinion based upon a suspicion or assumption that the doctor is sympathetic to the patient.  *See Lester,* 81 F.3d at 832; *Van Nguyen,* 100 F.3d at 1465.  The record contains no evidence that Dr. Arnold's assessment of Plaintiff's limitations was based upon motives other than sound medical judgment.  "In the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it."  *See Reddick v. Chater,* 157 F.3d 715, 726 (9th Cir. 1998).

Here, because no evidence of actual impropriety exists, the ALJ erred by considering "the context," or the fact that Plaintiff sought the evaluation as part of her application for benefits.  Because the ALJ relied upon multiple improper reasons in determining the weight to give to Dr. Arnold's opinion, remand is required for a proper analysis of this opinion.

2.    **Sharon Underwood, Ph.D., and Eugene Kester, M.D.**

Plaintiff contends the ALJ erred by failing to address the opinions of Drs. Underwood and Kester. ECF No. 17 at 15. Plaintiff argues the ALJ is required to consider and weigh this evidence. ECF No. 17 at 15.[2]

Non-examining consultant Sharon Underwood, Ph.D., completed a check-the-box Psychiatric Review Technique on October 31, 2007. Tr. 420-432. Dr. Underwood assessed Plaintiff with moderate difficulties in maintaining concentration, persistence or pace. Tr. 430. On the same day, Dr. Underwood completed a Mental Residual Functional Capacity Assessment form. Tr. 434-437. In that form, Dr. Underwood assessed Plaintiff with moderate impairments in her abilities to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods and interact appropriately with the general public. Tr. 434-435. Dr. Underwood prefaced her recommendation for Plaintiff's RFC with the caveat: "Credibility remains an open question. Due to varying views [in the record] regarding credibility, these limitations are based on [the] assumption that claimant is credible." Tr. 436.

On March 3, 2008, Eugene Kester, M.D., a psychiatrist, found no new evidence or clinical information, and affirmed Dr. Underwood's assessments. Tr. 438.

An ALJ need not discuss all evidence presented; rather, the ALJ need only explain why significant probative evidence has been rejected. *Vincent v. Heckler*, 739 F.2d 1393, 1394-1395 (9th Cir. 1984). Without commenting upon whether these two evaluations are significant and probative, the Court directs the ALJ on remand to specifically address these opinions and explain the weight provided to

---

[2]Notably, the ALJ failed to comply with the Appeals Council order on remand specifically directing the ALJ to evaluate Dr. Underwood's opinion "and explain the weight given to such opinion evidence." Tr. 131.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 12

these sources specifically and thoroughly, to the extent that a subsequent reviewer may follow the ALJ's reasoning.  *See Reddick*, 157 F.3d at 725.

### 3.    Debra Brown, Ph.D.

Plaintiff contends the ALJ erred by discrediting the opinions from Debra Brown, Ph.D., on the basis that the opinions were based upon Plaintiff's self-reports and were inconsistent with her daily activities.  ECF No. 17 at 11.  The ALJ concluded that the doctor's opinion that Plaintiff suffered from significant limitations was internally inconsistent with her own findings on examination.  Tr. 29.

The record contains three reports from Dr. Brown:  (1) April 25, 2007; (2) May 17, 2009; and (3) April 6, 2010.  Tr. 368-372, 512-519, 545-552.  In her report dated April, 25, 2007, Dr. Brown administered the mini-mental status exam, the Trail Making Tests A & B, and the PAI personality inventory.  Tr. 369-70.  Dr. Brown reported that Plaintiff's test results revealed normal range results, except that she endorsed hearing voices, and suffering traumatic stressors.  Tr. 369-370.  Dr. Brown concluded, "I believe Ms. Bondarenko is experiencing a psychotic disorder that presently is somewhat controlled with Zyprexa."  Tr. 371.  Dr. Brown opined that Plaintiff was likely underreporting her condition "possibly because she was feeling distrustful."  Tr. 371.  Dr. Brown noted that psychotherapy would be beneficial, but Plaintiff "does not want any psychotherapy treatment . . . ."  Tr. 371.  Plaintiff told Dr. Brown she felt well, she liked to ride her bike, spend time with friends going out to eat, visiting friends at their homes, and watching movies.  Tr. 371.

Plaintiff's test scores on the Trail Making Tests and PAI validity scales were within the normal range.  Tr. 369-370.  Dr. Brown noted that Plaintiff's PAI inventory did not reveal "marked elevations that would indicate the presence of severe clinical psychopathology, although she admitted to experiencing mild maladaptive behavior patterns aimed at controlling anxiety."  Tr. 370.  Dr. Brown

ORDER GRANTING PLAINTIFF'S MOTION . . . - 13

also noted that Plaintiff admitted to "mild and transient depressive symptomology." Tr. 370. Dr. Brown diagnosed Plaintiff with psychosis, NOS, and bipolar disorder, NOS, and assigned Plaintiff a GAF score of 31. Tr. 371. In the accompanying 2007 Psychological/Psychiatric evaluation form, Dr. Brown assessed Plaintiff with several severe limitations related to social factors, and one marked limitation related to cognitive factors. Tr. 375.

On May 17, 2009, Dr. Brown again examined Plaintiff and provided a narrative report that indicated Plaintiff was "tangential and circumstantial in her thought processes," and concluded Plaintiff had a formal thought disorder. Tr. 513. Dr. Brown noted at the time of the report, Plaintiff was living at Anna Ogden Hall, and she performed housework including washing laundry, preparing meals, and grocery shopping. Tr. 514. She had a car and a driver's license, and she watched television, played basketball, went for walks, and spent time with her boyfriend. Tr. 514-515.

Dr. Brown concluded that overall, Plaintiff's mini-mental status exam results revealed she was "impaired." Tr. 513. "She appeared paranoid and hesitated to answer questions." Tr. 513. Dr. Brown concluded that Plaintiff's medication "seems to be working." Tr. 513.

On the Trail Making tests, Plaintiff scored within the normal range. Tr. 513-514. Dr. Brown found that "once again, [Plaintiff's] PAI is invalid" because the results revealed several inconsistencies. Tr. 514. Dr. Brown noted the inconsistencies were "not surprising," because Plaintiff "returned three different times to complete her PAI and interview." Tr. 512, 514.

In the accompanying Psychological/Psychiatric evaluation form, Dr. Brown assessed Plaintiff with three severe impairments in social factors – the abilities to relate appropriately to coworkers and supervisors, interact appropriately in public contacts, and respond appropriately to and tolerate the pressures and expectations of a normal work setting. Tr. 518. Dr. Brown assessed Plaintiff with one marked

ORDER GRANTING PLAINTIFF'S MOTION . . . - 14

cognitive impairment in the ability to exercise judgment and make decisions.  Tr. 518.

On April 6, 2010, Dr. Brown provided a brief narrative report related to a third exam of Plaintiff.  Tr. 552.  Dr. Brown reported that Plaintiff's overall test scores were within the normal range.  Tr. 552.  With regard to the PAI test, Dr. Brown summarily noted the results were valid, but inconsistent with previous presentations.  Tr. 552.

In the accompanying Psychological/Psychiatric evaluation form, Dr. Brown noted that Plaintiff reported "everything is fine now," and she had "stopped taking all prescribed medications insisting she is 'ok.'"  Tr. 545.  Dr. Brown also noted Plaintiff presented "no indication of a formal thought disorder or psychotic process," but warned that she believed Plaintiff "is highly likely to begin experiencing psychotic symptoms in the near future."  Tr. 545, 549.  Dr. Brown diagnosed Plaintiff with "schizophrenia, residual type in remission."  Tr. 547.  Dr. Brown assessed Plaintiff with a single marked impairment in her ability to exercise judgment and make decisions, noting "client is very unrealistic about her psychosis and treatment."  Tr. 548.  Dr. Brown found Plaintiff had no impairments in any other cognitive or social factors.  Tr. 548-549.

The ALJ concluded Dr. Brown's early opinions assessing Plaintiff with severe limitations were not well supported, relied unduly upon Plaintiff's discredited self-reports, and were inconsistent with Plaintiff's reported daily activities.  Tr. 29.[3]  All three reasons are specific and legitimate and supported by the record.

------

[3]The ALJ noted Dr. Brown's reliance upon the "rae [sic] test of malingering," and observed that "according to Dr. McKnight, there is no such thing."  Tr. 29.   Dr. McKnight is incorrect.  *See* "*A Review of Rey's Strategies for Detecting Malingered Neuropsychological Impairment*," Journal of Forensic

ORDER GRANTING PLAINTIFF'S MOTION . . . - 15

1    In rejecting a physician's opinion, an ALJ properly considers inconsistency
2    between a physician's findings and conclusions. *Johnson v. Shalala*, 60 F.3d 1428,
3    1432-1433 (9th Cir. 1995); *Magallanes,* 881 F.2d at 751. Moreover, the existence
4    of an inconsistency between a doctor's findings and conclusions is a specific and
5    legitimate reason for rejecting that opinion. *See Young v. Heckler*, 803 F.2d 963,
6    968 (9th Cir. 1986) (treating doctor's conclusory opinion that claimant was
7    disabled was properly rejected by ALJ when it was internally inconsistent and not
8    consistent with doctor's prior medical reports).

9        In this case, the record reveals that the results from the objective medical
10   tests administered by Dr. Brown did not reveal severe limitations. Tr. 369-370,
11   513-514, 552. Most were within the normal range, and by the 2010 examination,
12   Dr. Brown opined that Plaintiff was experiencing no symptoms. Tr. 548-549. As
13   such, Dr. Brown's assessments failed to provide medical evidence "consisting of
14   signs, symptoms, and laboratory findings," that Plaintiff had severe limitations.
15   *See* 20 C.F.R. § 404.1508.

16       Additionally, a physician's opinion may be rejected if it is based on a
17   claimant's subjective complaints which were properly discounted. *Tonapetyan v.*
18   *Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). In this case, Dr. Brown relayed
19   several of Plaintiff's self-reported claims that she heard voices, she thought she
20   was "possessed," she had suffered traumatic stressors, she was often confused, and
21   she had a poor memory. Tr. 368-370, 513. As analyzed above, the ALJ properly
22   gave little credibility to Plaintiff's reports about the severity of her symptoms, and
23   ///

24
25   Neuropsychology, Vol. 2, No. 3/4 (2002) ("Rey developed many eponymous tests
26   and procedures. Three are relatively well known in American neuropsychological
27   literature as 'tests of malingering': The Rey 15-Item Memory Test (RMT), the
28   Rey Word Recognition Test (WRT), and the Rey Dot Counting Test (DCT).")

ORDER GRANTING PLAINTIFF'S MOTION . . . - 16

thus the ALJ did not err by discounting Dr. Brown's opinions that were premised upon Plaintiff's self-reported symptoms.

Moreover, a treating physician's opinion may be discounted where it is inconsistent with a claimant's level of functioning. *Rollins*, 261 F.3d at 856. Dr. Brown assessed Plaintiff with multiple severe limitations in both social and cognitive functioning. Yet Plaintiff reported she rode her bike, jogged, biked, visited friends, went out to eat, watched movies, performed household chores, prepared meals and grocery shopped. Tr. 371, 514. The ALJ properly found Dr. Brown's early assessments that Plaintiff had multiple severe limitations in social functioning were contradicted by her ability to perform routine activities of daily living, including frequently socializing with friends.

Finally, at the conclusion of the analysis of Dr. Brown, the ALJ provided an additional reason for discounting Dr. Brown's opinion:

> There is a possibility a doctor, like Dr. Brown, may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. While it is difficult to confirm the presence of said motives, they are more likely in situations where the opinion in question departs substantially from the objective evidence in the record, as in the current case.

Tr. 29. However, the ALJ points to no evidence of actual impropriety on the part of Dr. Brown. The source of report is a factor that justifies rejection only if evidence exists of actual impropriety or no medical basis exists for opinion. *Saelee v. Chater*, 94 F.3d 520, 523 (9th Cir. 1996); *Van Nguyen v. Chater,* 100 F.3d 1462, 1465 (9th Cir. 1996). Furthermore, an ALJ "may not assume that doctors routinely lie in order to help their patients collect disability benefits." *Ratto v. Sec'y, Dept. of Health and Human Servs.*, 839 F. Supp. 1415, 1426 (9th Cir. 1993); *Lester,* 81 F.3d at 832.

In this case, the record contains no evidence that Dr. Brown indicated Plaintiff was severely limited out of sympathy for her patient, or with the objective

ORDER GRANTING PLAINTIFF'S MOTION . . . - 17

of assisting with her benefits claim. *See Reddick,* 157 F.3d at 725-726 (ALJ erred in assuming that the treating physician's opinion was less credible because his job was to be supportive of the patient).  Because the case requires remand, the ALJ shall reconsider Dr. Brown's opinion and provide a new analysis.

### 4.    Gregory J. Charboneau, Ed.D.

Plaintiff contends the ALJ erred by discrediting Dr. Charboneau's opinion because Plaintiff's "presentation is more than self-reporting.  And her presentation was psychotic."  ECF No. 17 at 13.  The ALJ found that Dr. Charboneau's opinion deserved little weight because he relied heavily upon Plaintiff's self-reports, and his conclusions about Plaintiff's impairments were inconsistent with his exam notes.  Tr. 30.

Dr. Charboneau examined Plaintiff on October 25, 2007.  Tr. 415-419.  Dr. Charboneau administered the Mini Mental Status Exam and found Plaintiff presented poor mental tracking, and her score was within the normal range, but below the median.  Tr. 418.  Her recent memory was limited, but her remote memory was appropriate.  Tr. 418.  She presented as appropriate in her speech with adequate comprehension, and her attention and concentration were fair.  Tr. 418.  Dr. Charboneau found that Plaintiff "presents with indications of severe changes in mood, even though she could not provide detailed information."  Tr. 419.  Also, Dr. Charboneau indicated that his diagnosis was premised upon Plaintiff's religious preoccupation:

> She presents with preoccupation with a religious issue and death, as well as the reported marked confusion of her thoughts.  Even though at this time the confusion of thought is not acute, the religious preoccupation continues, so that she is still presenting as psychotic.

Tr. 419.  Dr. Charboneau diagnosed Plaintiff with schizoaffective disorder, bipolar type, and assigned a GAF of 45.  Tr. 419.

///

ORDER GRANTING PLAINTIFF'S MOTION . . . - 18

The ALJ noted that Dr. Charboneau's report indicated Plaintiff admitted that hearing voices may have been her imagination, and she was vague in describing her daily activities. Tr. 30. Her test results did not reveal significant abnormalities in her speech and comprehension, and she was not willing to undergo treatment. Tr. 30. The ALJ concluded that Dr. Charboneau relied upon Plaintiff's vague self-reports that contradicted her objective test results. Tr. 30.

As noted above, inconsistency between a doctor's findings and conclusions is a specific and legitimate reason for rejecting that opinion. *See Young*, 803 F.2d at 968. Also, a physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan*, 242 F.3d at 1149.

In this case, the ALJ's determination that Dr. Charboneau's conclusions are contrary to his findings is supported by the record. For example, Dr. Charboneau relied upon Plaintiff's self-report in discovering her history. Tr. 415-416. Also, Plaintiff refused to explain the content of her religious preoccupation, and she claimed to have poor concentration, excessive worrying, panic, fear, anger, excessive sleeping, mood swings, irritability, stress, nervousness, crying, anxiety and sadness. Tr. 416. Yet none of these impairments were supported by Dr. Charboneau's objective tests. Tr. 418-419. Thus, the ALJ did not err in relying upon the inconsistency between Plaintiff's test results and Dr. Charboneau's opinion.

Finally, the ALJ relied upon Dr. McKnight's testimony that questioned whether Dr. Charboneau actually conducted the examination and evaluated Plaintiff: "Dr. Charboneau's assistant likely did most of the testing and in the experience of Dr. McKnight, at times, Dr. Charboneau's assistant is the only one who sees the client." Tr. 29-30. Dr. McKnight offered no evidence to indicate that in this case, Dr. Charboneau did not examine Plaintiff. It is impossible for the Court to decipher how heavily the ALJ relied upon Dr. McKnight's speculation in

ORDER GRANTING PLAINTIFF'S MOTION . . . - 19

1   determining the weight to give the medical opinion.  As such, on remand, the ALJ

2   will reconsider the opinion of Dr. Charboneau and provide an analysis that relies

3   upon valid factors.

4       **5.      James E. Bailey, Ph.D.**

5       Plaintiff argues the ALJ erred by giving little weight to Dr. Bailey's GAF

6   assessment.  ECF No. 17 at 15.

7       James E. Bailey, Ph.D., examined Plaintiff on March 1, 2011.  Tr. 570-576.

8   At that exam, Plaintiff complained of "no symptoms of psychosis and no

9   symptoms of bipolar disorder."  Tr. 570.  Dr. Bailey noticed Plaintiff had a "very

10  inconsistent mental health history and very inconsistent presentation and at various

11  times, no-shows."  Tr. 570.   During the exam, Dr. Bailey noted "some evidence of

12  malingering," and Plaintiff's "mood and affect were not congruent with any

13  psychotic or bipolar disorder."  Tr. 572.

14      Plaintiff's test results on the WAIS-IV indicated a borderline range of

15  intellectual functioning.  Tr. 573.  Dr. Bailey noted that Plaintiff's "effort was

16  highly variable."  Tr. 573.  Plaintiff's general memory was in the deficient range of

17  functioning, however, Dr. Bailey noted her scores indicated poor effort or

18  malingering.  Tr. 574.  Specifically, the Miller Forensic Assessment of Symptoms

19  test indicated Plaintiff was malingering.  Tr. 574.  Plaintiff completed the

20  Minnesota Multiphasic Inventory test, which normally takes about 40 minutes to

21  complete, but Plaintiff took about three and one-half hours to complete it.  Tr. 574.

22  Dr. Bailey found the results were not valid.  Tr. 575.

23      Dr. Bailey diagnosed Plaintiff with rule out malingering motivation, rule out

24  borderline intellectual functioning, and personality disorder with passive-

25  aggressive, dependent and avoidant traits.  Tr. 575.  Dr. Bailey concluded that

26  Plaintiff's prognosis is "fair, if she is encouraged to return to the world of work."

27  *Id*.  Plaintiff told Dr. Bailey she performed her own cooking, cleaning, shopping,

28  and she drives a car.  Tr. 572.  Dr. Bailey assigned a GAF score of 60.  *Id.*

ORDER GRANTING PLAINTIFF'S MOTION . . . - 20

The ALJ reviewed Dr. Bailey's report in detail.  Tr. 30-31.  The ALJ noted Plaintiff reported to Dr. Bailey that no real reason existed to support why she was unable to work, and with her objective test scores that were consistent with malingering and/or feigning impairments.  Tr. 31.  Finally, the ALJ noted that Dr. Bailey opined that Plaintiff is able to do simple, repetitive tasks.  Tr. 31.  The ALJ concluded that the evidence revealed Plaintiff was malingering.  Tr. 31.

Without citation to authority, Plaintiff advances a novel argument that a GAF score of 60 reveals a moderate impairment, and thus establishes a severe impairment at step two.  ECF No. 17 at 15.

The Global Assessment of Functioning ("GAF") score is the clinician's judgment of the individual's overall level of functioning.  *See* Diagnostic and Statistical Manual of Mental Disorders, DSM-IV, 30-32 (4th ed. 1994).  GAF scores of 51 to 60 are associated with moderate impairment in occupational functioning.  *Martise v. Astrue*, 641 F.3d 909, 919 (8th Cir. 2011).  However, the ALJ has no obligation to credit or even consider GAF scores in the disability determination.  *See* 65 Fed. Reg. 50746, 50764-50765 (Aug. 21, 2000) ("The GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorders listings."); *see also Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002).

Moreover, GAF scores include a significant number of non-medical factors, such as homelessness and legal troubles that do not necessarily translate into work-related functional impairments.  DSM-IV[4] 33.  Further, GAF scores reflect the "clinician's judgment of the individual's overall level of functioning."  *Id.*  The GAF assessment encompasses "psychological, social and occupational functioning," but are not meant to be a conclusive medical assessment of overall

---

[4]The 2013 DSM–V dropped the use of the GAF.  DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 16 (5th ed. 2013).

ORDER GRANTING PLAINTIFF'S MOTION . . . - 21

functioning, but rather, are only intended to be "useful in planning treatment[,] . . . measuring its impact, and in predicting outcome." *Id*.

In other words, while a GAF score provides a general indication of the ability to perform basic work activities, the specific score assigned may relate more particularly to functioning other than occupational functioning, which is the issue at step two of the sequential evaluation process. As a result, Plaintiff's reliance upon a GAF score to establish a severe impairment at step two is not persuasive.

**C.    Step Two**

Plaintiff contends the ALJ erred by failing to find at step two that her mental impairments were severe. ECF No. 17 at 9-10. She relies upon what she characterizes as "an extended history of mental health issues," and asserts that "[a]lmost all of the diagnoses from her examining doctors included a psychosis component, including schizophrenia." ECF No. 17 at 10. However, a diagnosis alone is not sufficient to establish a severe impairment. Instead, a claimant must show that her medically determinable impairments are severe. 20 C.F.R § 416.920(c).

At Step Two, the ALJ determines whether a claimant's impairments are severe and whether they meet the twelve-month durational requirement. 20 C.F.R. § 404.1520(a). At this Step, the claimant bears the burden of proving the threshold requirement of a "severe impairment." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). The claimant must show that she suffered from medically severe impairments that lasted or could be expected to last for a continuous period of at least twelve months. *Id*. To establish a severe impairment at step two, Plaintiff must provide evidence of a medically determinable impairment which can be shown to be the cause of his or her alleged symptoms. 20 C.F.R. §§ 404.1529, 416.929. An impairment or combination of impairments is not severe "if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). Plaintiff's own statement of symptoms, without more,

will not establish a severe impairment.  20 C.F.R. §§ 404.1508, 416.908.
Symptoms are distinguished from signs:

> symptoms . . . are an individual's own perception or description of the
> impact of his or her physical or mental impairment(s). . . . When any
> of these manifestations is an anatomical, physiological, or
> psychological abnormality that can be shown by medically acceptable
> clinical diagnostic techniques, it represents a medical 'sign' rather
> than a 'symptom.'

SSR 96-4p; *see also* 20 C.F.R. §§ 404.1528(a)-(b), 416.928(a)-(b).  Where claims
lack medical signs or laboratory findings to establish the existence of a medically
determinable physical or mental impairment, the claimant "must be found not
disabled at step 2 of the sequential evaluation process."  SSR 96-4p.  In other
words, Plaintiff establishes an impairment only if the record includes signs – *i.e.*,
the results of "medically acceptable clinical diagnostic techniques," such as tests –
in addition to symptoms – *i.e.*, Plaintiff's representations regarding her
impairment.  *See Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005).

A mental impairment generally is considered non-severe for purposes of step
two if the degree of limitation in the three functional areas of activities of daily
living, social functioning, and concentration, persistence or pace is rated as "none"
or "mild," and Plaintiff has suffered no episodes of decompensation.  20 C.F.R. §§
404.1520a(d)(1), 416.920a(d)(1).

In this case, the ALJ found that Plaintiff "does not have an impairment or
combination of impairments that has significantly limited (or is expected to
significantly limit) the ability to perform basic work-related activities for 12
consecutive months," and therefore Plaintiff does not have a severe impairment or
combination of impairments.  Tr. 25.  The ALJ's reasoning that Plaintiff did not
have a severe impairment was predicated upon the ALJ's analysis of the medical
evidence.  Because the ALJ's analysis of the medical evidence was fatally flawed,
the step two determination must be reconsidered after a proper analysis of the

ORDER GRANTING PLAINTIFF'S MOTION . . . - 23

medical evidence.  On remand, the ALJ will reconsider the medical evidence and, accordingly, reconsider his step two determination.

By remanding this case, the Court does not comment on the propriety of the ALJ's ultimate conclusion that Plaintiff was not disabled.  However, because the ALJ improperly discounted the findings of the medical evidence, remand is necessary.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is based on legal error, and requires remand.  On remand, the ALJ is directed to reconsider the medical opinions, and provide specific, valid reasons for the weight assigned to each medical opinion, and such that a reviewing court may understand the basis of the ALJ's conclusions.  After reconsidering the medical opinion evidence, the ALJ should also reconsider Plaintiff's severe impairments at step two, if necessary.  The decision is therefore **REVERSED** and the case is **REMANDED** for further proceedings consistent with this opinion.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED.**  The matter is remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. 405(g).

2.    Defendant's Motion for Summary Judgment, **ECF No. 19**, is **DENIED.**

3.    An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order, provide copies to counsel, entered judgment for **PLAINTIFF**, and **CLOSE** the file.

DATED August 22, 2014.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION . . . - 24